ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| **SINDICATO RC, RM & XP, LLC h/n/c/ BACOA FINCA + FOGÓN**<br><br>Apelado<br><br>v.<br><br>**ALTEA PROPERTIES, INC., y otros**<br><br>Apelante | KLAN202400938 | **APELACIÓN** procedente del Tribunal de Primera Instancia, Sala Superior de **Caguas**<br><br>Civil Núm.: **CG2023CV03481**<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y la Juez Barresi Ramos.

Cintrón Cintrón, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 31 de enero de 2025.

Altea Properties, Inc. (Altea Properties o parte apelante), nos solicita que revoquemos la *Sentencia* emitida el 20 de septiembre de 2024, por el Tribunal de Primera Instancia (TPI), Sala Superior de Caguas. Mediante la misma, el TPI denegó la solicitud de sentencia sumaria presentada por Altea Properties y declaró *Con Lugar* la demanda de referencia, ordenando a las partes celebrar un contrato de compraventa. Además, desestimó la reconvención instada contra la parte apelante y declaró *Con Lugar* una solicitud de sentencia sumaria incoada por el Sindicato RC, RM & XP, LLC h/n/c Bacoa Finca + Fogón (Bacoa o parte apelada).

Por los fundamentos que expondremos a continuación, se confirma la *Sentencia* apelada.

**I.**

El presente caso tiene su génesis en un pleito sobre incumplimiento de contrato, daños y perjuicios instado por el Sindicato RC, RM & XP, LLC h/n/c Bacoa Finca + Fogón (Bacoa o parte apelada), contra Altea Properties y la señora Daniela Puig

Rullán, entre otros.[1] En la demanda, se alegó que Altea Properties arrendó a Bacoa una propiedad ubicada en el Municipio de Juncos por el término de cinco (5) años, comenzando el 1 de noviembre de 2018, vencedero el 1 de noviembre de 2023. Bacoa esgrimió que el contrato contenía una cláusula que le concedía el derecho de adquirir la propiedad arrendada por la suma de $1,650,000.00, y que dicha opción podía ejercerla en cualquier momento durante la vigencia del contrato. Añadió que, luego de anunciar su interés en comprar la propiedad y tras varias incidencias, e111 de octubre de 2023, la codemandante Puig Rullán le envió una carta en la cual daba por terminado el contrato. Ello, por no recibir el canon de arrendamiento correspondiente al mes de octubre de 2023. Bacoa adujo que la interrupción unilateral de las conversaciones por parte de Altea Properties en un momento crítico del negocio conducente a la compraventa constituyó una acción deliberada, contumaz y temeraria.

Por todo lo anterior, Bacoa solicitó al TPI que: (1) declarara *ha lugar* la demanda y ordenara a Altea Properties y la señora Puig Rullán cumplir con los términos del contrato concernido; (2) ordenara que se efectúe la venta de la propiedad y se otorgue la escritura correspondiente y (3) condenara a Altea Properties y la señora Puig Rullán a resarcir todos los daños causados a Bacoa, con especial imposición de gastos, costas, intereses y honorarios de abogados por una suma no menor de $30,000.00 en virtud de la temeridad exhibida por éstos.

Altea Properties contestó la demanda el 28 de diciembre de 2023 y aceptó varias alegaciones mientras negó otras.[2] Entre varias de las defensas afirmativas que presentó, Altea Properties arguyó que Bacoa no pagó el canon de arrendamiento correspondiente al

---

[1] Apéndice del recurso, págs. 1-10.
[2] Apéndice del recurso, págs. 52-83. La señora Puig Rullán contestó la demanda el 4 de enero de 2024. Apéndice del recurso, págs. 88-108. Bacoa instó una *Réplica a Reconvención* el 16 de enero de 2024. *Íd.*, págs. 125-130.

mes de octubre de 2023, a tenor con lo dispuesto en las cláusulas 20 y 21 del contrato de arrendamiento suscrito entre las partes, ni dentro del término establecido en el contrato de arrendamiento suscrito entre las partes, ni antes de presentar la demanda de referencia, por lo cual dio por terminado el contrato mediante carta certificada con acuse de recibo el 11 de octubre de 2023. Añadió que, a pesar de lo anterior, Bacoa continuaba ocupando las propiedades que le fueron arrendadas, sin haberse firmado contrato alguno. Precisó que, como dueña de la propiedad objeto de la demanda, tenía la obligación legal de recabar información sobre la procedencia y legalidad del dinero que se utilizaría para la compraventa y Bacoa tenía que producirla, lo cual nunca hizo. Alegó que Bacoa no poseía solvencia económica, situación que dilató la opción de compra que ostentaba y no ejerció. Argumentó que Bacoa obstaculizó el proceso de la compraventa e incumplió con el contrato voluntariamente al dejar de pagar el canon de arrendamiento correspondiente al mes de octubre de 2023, lo cual provocó la cancelación. Altea Properties hizo hincapié en que no tuvo participación alguna respecto a la causa por la cual se canceló el contrato y destaca que debido a los actos propios de Bacoa dicha entidad carecía de capacidad para reclamar el cumplimiento específico del contrato concernido. Junto a su demanda, Altea Properties incoó una reconvención contra Bacoa, en la cual reclamó una suma no menor de $100,000.00 por concepto de cánones de arrendamiento posteriores al 1 de noviembre de 2023, más el correspondiente interés legal, así como $5,000.00 por concepto de honorarios de abogados.

El 29 de mayo de 2024 Bacoa instó una solicitud de sentencia sumaria, en la cual expuso 7 hechos pertinentes que, a su consideración, no estaban en controversia. Esencialmente arguyó que procedía, como cuestión de derecho, que se dictara sentencia

sumaria a su favor, decretándose que existía un contrato válido y vinculante entre las partes, el cual, entre otras cosas, obligaba a Altea Properties a venderle la propiedad concernida por el precio acordado de $1,650,000.00. Lo anterior, al entender que cumplió cabalmente con el único requisito impuesto por el contrato; esto es, ejercer el derecho de compra dentro del término de vigencia de este. En esa dirección, adujo que la cláusula número 23 del contrato le concedía la facultad de decidir unilateralmente comprar la propiedad. Añadió que la concesión tenía carácter de exclusividad, porque el derecho de opción se le concedía exclusivamente y a nadie más. Puntualizó que el derecho de opción que se le concedió en el contrato no estaba condicionado a nada que no fuera su voluntad, la cual fue expresada de forma inequívoca y por escrito. Destacó que, aunque el contrato disponía el plazo para ejercer la opción, este no indicaba un término de tiempo definido dentro del cual se tuviera que consumar la compraventa de la propiedad.

A su vez, Bacoa solicitó que la totalidad del dinero consignado correspondiente a los cánones de arrendamiento fuera imputada contra el precio de venta acordado en el contrato. Resaltó que, de Altea Properties haber cumplido con el contrato, el cierre de la transacción hubiera ocurrido en septiembre de 2023, economizándole miles de dólares. Arguyó que lo contrario constituiría un enriquecimiento injusto de Altea Properties. De otra parte, requirió al foro de instancia que desestimara sumariamente la reconvención instada por Altea Properties por ser inmeritoria como cuestión de hecho y de derecho. Por último, solicitó la imposición de honorarios por temeridad por una suma no menor de $10,000.00.[3]

---

[3] A su solicitud anejó el *Contrato de Arrendamiento* suscrito entre Altea Properties y Bacoa; carta del 7 de junio de 2023 de Bacoa notificando a Altea Properties el ejercicio de opción de compra; borrador de escritura de Compraventa; correos electrónicos entre Altea Properties y Bacoa; misiva mediante la cual Altea Properties dio por terminado el contrato con fecha de 11 de octubre de 2023 y

Por su parte, el 8 de julio de 2024, Altea Properties incoó *una Oposición a Moción en Solicitud de Sentencia Sumaria y Solicitud de Sentencia Sumaria Parcial a Favor de la Parte Codemandada Altea Properties, Inc.*[4] En primer orden, arguyó que la solicitud de sentencia sumaria de Bacoa era prematura por no haber culminado el descubrimiento de prueba. Además, argumentó que procedía denegar dicho petitorio y dictar sentencia sumaria a su favor porque la demanda de referencia lo que pretendía era revivir un contrato que fue cancelado por falta de pago, con el único propósito de extender la opción de compra de una propiedad que le pertenece. Especificó que Bacoa intentaba revertir las acciones que motivaron la cancelación del acuerdo de arrendamiento suscrito entre las partes. Pormenorizó que la opción de adquirir la propiedad concernida por el precio convenido de $1,650,000.00 estaba vigente durante el término del contrato, mientras durara el mismo. Asimismo, adujo que, como Bacoa no cumplió el contrato, no produjo evidencia de su solvencia y de la procedencia legal de la suma pactada para la transacción, no produjo evidencia de la fuente de la suma acordada, ni firmó ninguno de los contratos que le fueron enviados para su consideración, procedió a darlo por terminado, con efectividad al 11 de octubre de 2023. Añadió que los asuntos que rodearon la negociación involucraban elementos de subjetividad, intención, propósitos mentales, negligencia o credibilidad, los cuales requerían la celebración de un juicio plenario, o al menos, la

---

*Declaración Jurada* del señor Raúl Correa Soto, miembro y coadministrador de Bacoa.

[4] Altea Properties anejó a la solicitud: una declaración jurada de la señora Puig Rullán; Requerimiento de Admisiones enviado a Bacoa en noviembre de 2023 y la contestación al requerimiento de admisiones instada por Bacoa. La presidenta de Altea Properties, señora Puig Rullán, se unió al mencionado escrito mediante moción presentada el 10 de julio de 2024. El 16 de agosto de 2024, Bacoa replicó a los escritos en oposición a su solicitud de sentencia sumaria y contestó la petición de sentencia sumaria instada por Altea Properties. Junto a dicho escrito incluyó como anejos: Contrato de Arrendamiento; carta del 7 de junio de 2023 dirigida a la señora Puig Rullán; Proyecto de Escritura de Compraventa; correos electrónicos entre las partes y carta del 11 de octubre de 2023 de Altea Properties a Bacoa dando por terminado el contrato de arrendamiento por falta de pago. Apéndice del recurso, págs. 340-354.

culminación del descubrimiento de prueba para poder estar en posición de hacer una oposición a la solicitud de sentencia sumaria adecuada e informada. Destacó que existía controversia sobre el asunto medular del ejercicio de la opción y el perfeccionamiento de la compraventa, así como de las circunstancias que rodearon la cancelación del contrato de arrendamiento.

En armonía con lo anterior, Altea Properties esgrimió que el Tribunal de Primera Instancia debía resolver las siguientes interrogantes:

1. ¿Cumplió SINDICATO con los términos y condiciones del Contrato?;

2. ¿Qué efecto tuvo sobre el derecho de opción de compra que no se haya perfeccionado la compraventa dentro del término de vigencia del contrato?;

3. ¿Podía SINDICATO incumplir con su obligación de pago- a pesar de ocupar la propiedad-, por alegadamente estar en negociaciones de compraventa?,

4. ¿Podía ALTEA cancelar el contrato en cuestión por falta de pago?

5. ¿Si a pesar de SINDICATO no haber cumplido con la orden de este tribunal sobre el descubrimiento de prueba y no haber contestado los interrogatorios, ni producido ni uno solo de los documentos que le fueran requeridos desde el 20 de noviembre de 2023, puede el tribunal atender la Sentencia Sumaria de SINDICATO?

Asimismo, Altea Properties requirió al foro de instancia que declarara *ha lugar* sumariamente la reconvención presentada contra Bacoa y su causa de acción por cobro de cánones de arrendamiento. Enumeró 16 hechos esenciales y pertinentes sobre los cuales entendía que no existía controversia sustancial. En esencia, alegó que el Tribunal debía ordenar a Bacoa pagar el canon de arrendamiento firmado por las partes mientras ésta continúe ocupando la propiedad objeto del litigio.[5]

---

[5] El 3 de julio de 2024, el TPI dictó una *Orden* que declaró *Ha Lugar* la solicitud presentada por Bacoa dirigida a ordenar al Registrador de la Propiedad anotar la prohibición de enajenar sobre la finca en cuestión. Apéndice del recurso, pág. 291.

Luego de múltiples trámites procesales relacionados al descubrimiento de prueba y a una solicitud de inhibición del Honorable Juez que presidió el caso, Elías Rivera Fernández, que culminó con la presentación de un recurso apelativo ante este Foro[6], el 20 de septiembre de 2024, el TPI dictó la *Sentencia* apelada. Mediante la misma, declaró *Con Lugar* la moción de sentencia sumaria de Bacoa y *No Ha Lugar* aquella instada por Altea Properties, a la cual se unió la señora Puig Rullán. Consecuentemente, declaró *Con Lugar* la demanda de Bacoa, únicamente en cuanto a Altea Properties y desestimó la demanda en cuanto a la señora Puig Rullán, por entender que su intervención en el caso fue una limitada, en carácter representativo de la aludida entidad. El foro de instancia también desestimó la reconvención presentada contra Bacoa.[7] Así las cosas, se ordenó a las partes a celebrar la compraventa de la propiedad por el precio pactado en el contrato. También le impuso a Altea Properties una condena en honorarios de abogado por temeridad, pagadera a favor de Bacoa, en la suma de $10,000.00.

El TPI concluyó que desde el 7 de junio de 2023 Bacoa ejerció su facultad unilateral y exclusiva de llevar a cabo el contrato de compraventa de la propiedad concernida, la cual ejercitó dentro del plazo acordado para ello; sin que nada más le fuera requerido ni ninguna otra condición que no fuera su propia voluntad. Añadió que un análisis riguroso de los argumentos de las partes y los documentos anejados a las mociones dispositivas, bastaban para validar las alegaciones de la demanda y los argumentos presentados por Bacoa en su moción de sentencia sumaria.

En consonancia con lo anterior, el foro *a quo* dispuso lo siguiente:

---

[6] El TPI denegó la solicitud de inhibición. Por medio de una *Resolución* dictada el 31 de octubre de 2024 en el caso KLCE202401115, este Foro denegó la expedición del auto de *certiorari* instado por Altea Properties.
[7] Apéndice del recurso, págs. 399-412.

Evidentemente, Sindicato [Bacoa] no estaba obligada a firmar un nuevo contrato de opción, como admiten los mismos demandados que fue su intención al enviar no uno, sino dos contratos nuevos, pues el Contrato ya contenía todos los términos y condiciones relacionados con dicha opción. Ello pone al relieve el hecho de que Altea Properties se negó a honrar el Contrato, exigiendo la firma otros "...dos contratos que le fueron enviados para su consideración." Además, el expositivo "séptimo" del proyecto de escritura de compraventa, documento que no fue controvertido por los demandados, indicaba que "...la entrega de la Propiedad a la Parte Compradora se llevará a cabo dentro de los seis meses siguientes a este otorgamiento y en ese momento la Propiedad se entregará con todos sus usos y sus anexos." Dicha condición tampoco surge del Contrato.

Así, el TPI determinó que Altea Properties se apartó unilateralmente de los claros términos y condiciones del Contrato, para plantear nuevos términos, acción que lo llevó a incumplirlo y despojar a Bacoa de su derecho de comprar la Propiedad en los términos previamente convenidos, por escrito.[8] Hizo hincapié en que no podía entretener la teoría de Altea Properties sobre que uno de los alegados incumplimientos de Bacoa fue el no pagar el canon de arrendamiento de octubre de 2023, porque para esa fecha ya Altea Properties había quebrantado el contrato. En ese sentido, dispuso que Altea Properties obstaculizó el cierre de la compraventa, al punto de impedir que se llevara a cabo el mismo.

De otro lado, el foro de instancia concluyó que Altea Properties procedió con temeridad en la tramitación del caso. Detalló que las actuaciones y la conducta exhibida por dicha entidad fueron contrarias a derecho y a la buena fe y que ésta no vino al tribunal con las manos limpias. Expresó que ello obligó a Bacoa a tener que presentar la reclamación judicial de epígrafe, para exigir el cumplimiento del contrato.

Por último, el Tribunal de Primera Instancia ordenó la imputación de las cantidades de dinero equivalentes al canon de arrendamiento mensual consignadas por Bacoa desde la

---

[8] El Tribunal destacó que ello ocurrió antes de la fecha de vencimiento del Contrato y antes de advenida la fecha de pago del canon correspondiente al mes de octubre de 2023.

presentación de la demanda al precio de compraventa. Ello, como una medida justa y equitativa, bajo el fundamento de que dichas consignaciones no habrían sido necesarias si la compraventa se hubiera ejecutado conforme a lo pactado. En esa dirección, expresó que, considerar las aludidas consignaciones como pagos adicionales por arrendamiento, constituiría un enriquecimiento injusto para Altea Properties.

Inconforme, Altea Properties acude ante este Tribunal de Apelaciones y alega que el TPI cometió los siguientes errores:

> Primero: Erró el Honorable Tribunal de Primera Instancia al declarar Ha Lugar la moción de sentencia sumaria presentada por la parte apelada a pesar de ser prematura al no haber culminado el descubrimiento de pruebas entre las partes.
>
> Segundo: Erró el Honorable Tribunal de Primera Instancia al declarar Ha Lugar la moción de sentencia sumaria presentada por la parte apelada aun cuando existen hechos medulares en controversia.
>
> Tercero: Erró el Honorable Tribunal de Primera Instancia al imputar al precio de compraventa las cantidades consignadas al Tribunal desde el inicio de la demanda y no como pago por los cánones de arrendamiento pactados, aun cuando la parte apelada continúa ocupando la propiedad.
>
> Cuarto: Erró el Honorable Tribunal de Primera Instancia al denegar la moción de sentencia sumaria presentada por Altea y consecuentemente desestimar la reconvención presentada a pesar [de] que la parte apelada no controvirtió los hechos materiales expuestos por Altea y procede como cuestión de derecho.
>
> Quinto: Erró el Honorable Tribunal de Primera Instancia al denegar la moción de sentencia sumaria presentada por Altea sin formular determinaciones de hechos y conclusiones de derecho a tenor con la Regla 42.2 de Procedimiento Civil.
>
> Sexto: Erró el Honorable Tribunal de Primera Instancia al imponer honorarios de abogado a Altea por concepto de temeridad.

El 27 de noviembre de 2024, Bacoa presentó su alegato, por lo que, con el beneficio de la comparecencia de todas las partes, procedemos a resolver.

**II.**

**A**.

La Regla 36 de Procedimiento Civil dispone el mecanismo extraordinario y discrecional de la sentencia sumaria. 32 LPRA, Ap. V, R. 36. El propósito principal de este mecanismo procesal es propiciar la solución justa, rápida y económica de litigios civiles que no presentan controversias genuinas de hechos materiales, por lo que puede prescindirse del juicio plenario. *Banco Popular de Puerto Rico v. Cable Media of Puerto Rico, Inc. y otro*, res. el 7 de enero de 2025, 2025 TSPR 1; *Serrano Picón v. Multinational Life Ins*, 212 DPR 981 (2023).[9] Los tribunales pueden dictar sentencia sumaria respecto a una parte de una reclamación o sobre la totalidad de esta. 32 LPRA Ap. V, R. 36.1; *Meléndez González v. M. Cuebas*, 193 DPR 100 (2015). La sentencia sumaria procederá si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, junto a cualquier declaración jurada que se presente, si alguna, demuestran que no hay controversia real y sustancial sobre algún hecho esencial y pertinente y que, como cuestión de derecho, procede hacerlo. *González Meléndez v. Mun. San Juan et al.,* 212 DPR 601 (2023).

El promovente debe presentar una moción fundamentada en declaraciones juradas o en cualquier evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes sobre la totalidad o parte de la reclamación. 32 LPRA Ap. V, R. 36.1; *Universal Ins. y otro v. ELA y otros*, 211 DPR 455 (2023). La controversia sobre los hechos esenciales que genera el litigio tiene que ser real, no especulativa o abstracta. Es decir, tiene que ser de naturaleza tal que permita concluir que existe una controversia real y sustancial sobre hechos relevantes y

---

[9] Véase, además: *Oriental Bank v. Caballero García,* 212 DPR 671 (2023); *Ferrer et. al. v. PRTC*, 209 DPR 574, 580-581 (2022); *González Santiago v. Baxter Healthcare*, 202 DPR 281, 290 (2019); *Ramos Pérez v. Univisión*, 178 DPR 200, 213-214 (2010).

pertinentes. *Ramos Pérez v. Univisión,* supra, págs. 213-214, seguido en *Meléndez González v. M. Cuebas,* supra, pág. 110.

Nuestro ordenamiento civil y su jurisprudencia interpretativa dispone que se deben cumplir unos requisitos de forma los cuales deben satisfacerse al momento de presentar una solicitud de sentencia sumaria. Estos requisitos son: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria, (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del Tribunal; (5) las razones por las cuales se debe dictar sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V, R. 36.3; *Pérez Vargas v. Office Depot,* 203 DPR 687 (2019).

Por su parte, le corresponde a la parte promovida refutar dicha moción a través de declaraciones juradas u otra documentación que apoye su posición. Esto es, la parte que se opone debe proveer evidencia sustancial de los hechos materiales que están en disputa. *León Torres v. Rivera Lebrón,* 204 DPR 20 (2020). El hecho de no oponerse a la solicitud de sentencia sumaria no implica necesariamente que ésta proceda si existe una controversia legítima sobre un hecho material. Sin embargo, el demandante no puede descansar en las aseveraciones generales de su demanda, "sino que, a tenor con la Regla 36.5, estará obligada a 'demostrar que [tiene] prueba para sustanciar sus alegaciones'". La Regla 36.5 de Procedimiento Civil, dispone que de no producirse por parte del opositor una exposición de hechos

materiales bajo juramento, deberá dictarse sentencia sumaria en su contra. 32 LPRA Ap. V, R. 36.5; *Ramos Pérez v. Univisión,* supra, págs. 215-216.

La Regla 36.4 de Procedimiento Civil, establece que, si no se dicta sentencia sobre la totalidad del pleito, ni se concede todo el remedio solicitado o se deniega la moción de sentencia sumaria, y por tanto, es necesario celebrar juicio, será obligatorio que el Tribunal en su dictamen determine los hechos esenciales sobre los cuales no haya controversia sustancial y aquellos que sí se encuentran genuinamente en controversia. 32 LPRA Ap. V, R.36.4

Cónsono con lo anterior, nuestro estado de derecho le impone y exige al TPI, exponer los hechos materiales y esenciales que están en controversia, así como los que no lo están, independientemente de cómo resuelvan una solicitud de sentencia sumaria. *Meléndez González v. M. Cuebas,* supra, pág. 117. Al evaluar la solicitud de sentencia sumaria, el juzgador deberá: (1) analizar los documentos que acompañan la moción solicitando la sentencia sumaria, los incluidos con la moción en oposición y aquellos que obren en el expediente judicial y; (2) determinar si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.,* 136 DPR 881, 913-914 (1994).

Por último, en *Meléndez González v. M. Cuebas,* supra, el Tribunal Supremo de Puerto Rico estableció el estándar de revisión que debe utilizar este foro apelativo intermedio al revisar denegatorias o concesiones de mociones de sentencia sumaria. Conforme a ello, debemos utilizar los mismos criterios que los tribunales de primera instancia al determinar si procede dictar sumariamente una sentencia. En esta tarea sólo podemos considerar los documentos que se presentaron ante el foro de

primera instancia y determinar si existe o no alguna controversia genuina de hechos pertinentes y esenciales, y si el derecho se aplicó de forma correcta. La tarea de adjudicar los hechos relevantes y esenciales en disputa le corresponde únicamente al foro de primera instancia en el ejercicio de su sana discreción. *Vera v. Dr. Bravo*, 161 DPR 308, 334 (2004). Nuestro Más Alto Foro ha pautado que este Tribunal de Apelaciones se encuentra en la misma posición que el Tribunal de Primera Instancia al momento de revisar solicitudes de sentencia sumaria. *Meléndez González v. M. Cuebas*, supra, págs. 118-119. Es decir, debemos revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho a la controversia. *Íd.*

**B.**

Conforme al Art. 1042 del Código Civil de Puerto Rico de 1930,[10] 31 LPRA sec. 2992, "[l]as obligaciones nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitas o en que intervenga cualquier género de culpa o negligencia". Nuestro derecho de obligaciones preceptúa el principio de la libertad en la contratación. Conforme a este, las partes contratantes podrán establecer los pactos, cláusulas y condiciones que estimen convenientes, siempre que estos no sean contrarias a las leyes, la moral y al orden público. Art. 1207 del Código Civil de 1930, 31 LPRA sec. 3372.

Es norma establecida que para que un contrato sea válido es necesario que concurran los siguientes requisitos: consentimiento, objeto y causa. *Quest Diagnostics v. Mun. San Juan*, 175 DPR 994 (2009). Asimismo, en nuestro ordenamiento jurídico rige la teoría contractual de la libertad de contratación o la autonomía de la voluntad. Una vez perfeccionado el contrato por la concurrencia de los factores mencionados, las partes quedan obligadas, no solo al cumplimiento de lo expresamente pactado, sino también a todas las

---

[10] Vigente a la fecha de la causa de acción ante nuestra consideración.

consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley. Art. 1210 del Código Civil de 1930, 31 LPRA sec. 3375. Así, el incumplimiento contractual es definido como "el quebrantamiento de un deber que surge de un contrato expreso o implícito". De esta acción producir daños a una de las partes contratantes, surge una causa de acción. *Sociedad Legal de Gananciales v. Vélez & Asoc.*, 145 DPR 508, 521 (1998).

Sabido es que las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes y estos deben ser cumplidos a tenor con las mismas. Art. 1044 del Código Civil, 31 LPRA sec. 2994. En consideración a dicho postulado, "cuando las personas contratan crean normas obligatorias; tan obligatorias como la ley misma", por lo que "los contratos... tienen fuerza de obligar; tienen que ser cumplidos...". *VDE Corporation v. F&R Contractors*, 180 DPR 21, 34 (2010), citando a J.R. Vélez Torres, *Curso de Derecho Civil*, San Juan, Ed. Universidad Interamericana de Puerto Rico, 2006, T. IV, Vol. II, págs. 99-100.

A tenor con lo anterior, el Art. 1233 del Código Civil, 31 LPRA sec. 3471 estipula que, si los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas. En cambio, si las palabras parecieran contrarias a la intención evidente de las partes, esta última prevalecerá sobre las palabras. *Íd.* De modo que la intención de los contratantes es el criterio fundamental para fijar el alcance de las obligaciones contractuales. *Marcial Burgos v. Tome*, 144 DPR 522, 537 (1997). Por ello, el norte de la interpretación contractual es determinar cuál fue la intención real y común de las partes. *Municipio Mayagüez v. Lebrón*, 167 DPR 713, 723 (2006).

Para auscultar dicha intención, los tribunales han aplicado una metodología pragmática que consiste en estudiar los actos anteriores, coetáneos y posteriores al momento de perfeccionarse el

contrato, incluyendo otras circunstancias que puedan denotar o indicar la verdadera voluntad de los contratantes y el acuerdo que intentaron llevar a cabo. *VDE Corporation v. F&R Contractors*, supra, págs. 34-35.

**III.**

En sus señalamientos de error 1, 2 y 3, la parte apelante alega que no pudo descubrir prueba a pesar de los esfuerzos realizados porque la parte apelada no contestó los interrogatorios, ni produjo ninguno de los documentos que le requirió. Añade que lo anterior le imposibilitó de tomar deposiciones y de defenderse adecuadamente de las imputaciones contenidas en la solicitud de sentencia sumaria instada en su contra. Además, aduce que, en la *Sentencia* apelada, el TPI hizo una serie de determinaciones que no están sustentadas en el expediente. En particular, esboza que la parte apelada no presentó, más allá de una declaración jurada suscrita por uno de sus administradores, documento alguno que sustentara que: (1) se le notificó varias condiciones y exigencias de Altea Properties que no fueron parte del contrato y que no fueron aceptadas; (2) que la licenciada Sylvia M. González González exigió, a nombre de Altea Properties, que Bacoa firmara un nuevo contrato sobre opción de compraventa y entregara un 10% de depósito y (3) que Altea Properties obstaculizó el cierre de la compraventa. Basado en lo anterior es que la parte apelante arguye que la solicitud de sentencia sumaria presentada por la parte apelada fue prematura, y que el TPI debió actuar oportunamente sobre las órdenes de descubrimiento de prueba antes de dictar sentencia sumaria declarando *Ha Lugar* la demanda y desestimando la reconvención.

En la alternativa, la parte apelante esboza que existen hechos materiales en controversia que deben ser evaluados en un juicio en su fondo. Es su contención que no procede exigir el cumplimiento específico de un contrato cuando la otra parte incumplió con el

mismo. Añade que la parte apelada no podía dejar de pagar el canon de arrendamiento únicamente porque había notificado su interés en ejercer el derecho de opción de compraventa. Razona que ambas partes acordaron en el contrato que, si se dejaba de pagar tan siquiera un solo canon de arrendamiento dentro de los primeros 10 días de cada mes, Altea Properties tenía el derecho absoluto y unilateral de cancelarlo, como en efecto lo hizo. Al mismo tiempo, aduce que por las propias actuaciones de la parte apelada: (1) se vieron frustrados los esfuerzos para otorgarse la compraventa y (2) se canceló el contrato, cuyo derecho de opción quedó sin efecto. Detalla que la opción de compra no tenía un término "*ad infinitum*", sino que tenía que ejercerse y formalizarse dentro del término del contrato. Opina que, al darse por terminado el contrato el 11 de octubre de 2023, la parte apelada renunció y perdió todos sus derechos contractuales.

En cuanto a la orden del Tribunal de considerar el dinero consignado por la parte apelada como parte del precio de compraventa y no como pago por concepto de cánones de arrendamiento, la parte apelante intima que, de no revocarse dicha determinación, se le estaría permitiendo a la parte apelada la operación comercial de una propiedad ajena sin pagar precio por ello.

En los señalamientos de error 4 y 5, la parte apelante esencialmente argumenta que el TPI erró al declarar *No Ha Lugar* su moción de sentencia sumaria parcial en la que requirió que se concediera la reconvención instada contra la parte apelada. Entiende que el TPI atendió el caso de autos como uno sumamente sencillo, limitándolo a determinar la existencia de una opción de compraventa y si se optó por notificar su interés en ejercer la misma dentro del término pactado en el contrato. Lo anterior, sin considerar que existía un término pactado también para

perfeccionar la compraventa una vez ejercida la opción y que hubo ciertos incumplimientos de la parte apelada que atrasaron el cierre y motivaron la cancelación del contrato antes de la fecha de vencimiento. Igualmente, alega que el TPI denegó su moción de sentencia sumaria sin especificar los hechos probados ni consignar separadamente las conclusiones de derecho para identificar el *ratio decidendi*, de forma que se garantizara una revisión judicial de la misma.

Mediante su señalamiento de error número 6, la parte apelante esgrime que la imposición de temeridad del foro *a quo* constituyó un abuso de discreción y no se ajusta a la realidad del caso.

Por otro lado, la parte apelada está conforme con la *Sentencia* bajo nuestra consideración. A grandes rasgos, es su parecer que en el caso de autos no era necesario culminar el descubrimiento de prueba y mucho menos tomar deposiciones para que la parte apelante estuviera en posición de contestar la moción de sentencia sumaria. Añade que para resolver el caso de referencia solo se requería un análisis de pocos documentos, los cuales son totalmente conocidos por la parte apelante desde antes de haberse presentado la demanda. Sostiene que la parte apelante estaba exigiendo términos que nunca fueron parte del contrato de arrendamiento, los cuales objetó oportunamente. Aduce que el pronunciamiento apelado contiene determinaciones de hechos sustentadas por los documentos sometidos y las propias alegaciones de la parte apelante. Además, razona que la *Sentencia* apelada contiene todas las conclusiones de derecho necesarias para sostener el proceder del TPI. Por último, está de acuerdo con la imposición de honorarios por temeridad por la forma en que la parte apelante manejó el caso. Resalta que la parte apelante no podía pretender haber vulnerado

las disposiciones del contrato y, al mismo tiempo, exigir su cumplimiento únicamente cuando ello le convenía.

Por tratarse de una sentencia sumaria, este Tribunal debe evaluar *de novo* las solicitudes a favor y en contra de tal proceder, en unión a la documentación que surge del expediente. Luego de un ponderado análisis del expediente, así como de la normativa aplicable, concluimos que los errores señalados por la parte apelante no se cometieron. Por tanto, no incidió, ni abusó de su discreción el TPI al conceder el remedio sumario en cuestión. Tampoco erró al desestimar la reconvención incoada por la parte apelante.

Del récord se desprende que la parte apelada anejó a su solicitud de sentencia sumaria suficiente evidencia documental para probar cada una de sus alegaciones, por lo que estableció su derecho con claridad y demostró que no existían hechos materiales controvertidos que imposibilitaran que el TPI concediera su reclamo de forma sumaria y al mismo tiempo desestimara la reconvención incoada en su contra.

Según expuesto, las partes suscribieron un acuerdo de arrendamiento de la propiedad concernida el cual tendría una vigencia de cinco (5) años. El término, según pactado, era del 1 de noviembre de 2018 al 1 de noviembre de 2023. Es un hecho cierto que, por medio de las cláusulas número 23 y 24 del contrato de arrendamiento, Altea Properties concedió a Bacoa un derecho de opción de compra sobre la propiedad alquilada.[11] Durante la vigencia del contrato de arrendamiento, específicamente el 7 de

---

[11] "23. LA ARRENDADORA por la presente confiere a EL ARRENDATARIO el derecho para adquirir la totalidad de la propiedad de doce (12) cuerdas durante el término de este contrato por la suma de UN MILLÓN SEISCIENTOS CINCUENTA MIL DÓLARES CON CERO CENTAVOS ($1,650,000.)."

"24. De EL ARRENDATARIO no ejercer el derecho de opción de compra otorgado por este contrato y efectuar la compraventa, dentro del término de este contrato, perderá todo derecho de opción de compra y vendrá obligada a entregar LA PROPIEDAD a LA ARRENDADORA al término de este contrato." Apéndice del alegato en oposición, pág. 96.

junio de 2023, Bacoa notificó la intención de ejercer su derecho a comprar la propiedad por el precio pactado de $1,650,000.00.[12] A raíz de ello se comenzaron los trámites relativos a la negociación, e incluso se llegó a calendarizar el cierre para el 29 de septiembre de 2023.

Las alegaciones de la parte apelante no nos convencen. Esta arguye que las razones para dar por terminado el contrato de arrendamiento, el cual a su entender también eliminó el derecho a la opción de compraventa, fueron que la parte apelada no firmó ninguno de los contratos que le fueron enviados para su consideración y que tampoco pagó el canon de arrendamiento de octubre de 2023. No obstante, el expediente es claro en evidenciar que, desde que la parte apelada notificó su intención de comprar la propiedad en controversia, la parte apelada trajo a la mesa de negociación condiciones y exigencias que no formaron parte del contrato de arrendamiento. Lo anterior demuestra el incumplimiento del contrato desplegado por la parte apelante, ocurrido antes de la fecha de vencimiento del pago de octubre de 2023. Es claro que con sus actuaciones la parte apelante entorpeció el cierre de la compraventa al cual tenía pleno derecho la parte apelada. Ello le concedió a la parte apelada el derecho a exigirle a la parte apelante el cumplimiento concreto del contrato, en específico la cláusula de opción de compra por el precio pactado.

Por último, nuestro derecho procesal civil le concede al TPI la facultad para imponer el pago de honorarios de abogado a la parte litigante que obró de forma temeraria o frívola. Regla 44.1(d) de Procedimiento Civil, 32 LPRA Ap. V, R.44.1(d); *González Ramos v. Pacheco Romero*, 209 DPR 138, 145 (2022). Es decir, cuando existe temeridad, la imposición de honorarios a dicha parte es obligatoria. *Blás v. Hosp. Guadalupe,* 146 DPR 267, 334 (1998). La cuantía de

---

[12] Apéndice del alegato en oposición, pág. 100.

honorarios de abogado concedida no varía en la apelación a menos que esta sea excesiva, exigua o haya constituido un abuso de la discreción del tribunal apelado. *Andamios de PR v. JPH Contractors, Corp.*, 179 DPR 503, 520 (2010); *Ramírez Anglada v. Club Cala de Palmas*, 123 DPR 339, 350 (1989). Al ser discrecional la facultad de imponer honorarios por temeridad, este tribunal reitera su posición de no intervenir con la apreciación que realizó el foro primario. En este caso, la conducta de la parte apelante movió al tribunal a tal determinación. Esta sanción es producto del examen de la prueba y del proceder de Altea Properties en la tramitación del caso, específicamente de su comportamiento durante las negociaciones conducentes a concretar el contrato de compraventa. Ante la ausencia de una determinación irrazonable y, toda vez que la cuantía de $10,000.00 impuesta no nos parece excesiva, no intervendremos con la decisión del TPI.

Tampoco nos parece irrazonable la imputación de las cantidades consignadas por la parte apelada al precio de compraventa de la propiedad y no como pagos adicionales por arrendamiento. Concurrimos con el TPI con que ello resulta en una solución justa y equitativa, máxime cuando todo ello se hubiera evitado de la parte apelante haber cumplido fielmente con las cláusulas que suscribió con la parte apelada.

Procede que las partes celebren la compraventa de la propiedad por el precio pactado en el contrato, según dictaminado por el TPI.

**IV.**

Por los fundamentos que anteceden, se confirma la *Sentencia* impugnada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

La Jueza Rivera Marchand concurre con el resultado sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones